**SUSAN MARTIN (AZ#014226)**
**DANIEL BONNETT (AZ#014127)**
**JENNIFER KROLL (AZ#019859)**
**THERESA L. SEIFERT (AZ#023993)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com
tseifert@martinbonnett.com

**DANIEL POCHODA (# 021979)**
**ACLU FOUNDATION OF ARIZONA**
77 East Columbus
Phoenix, AZ 85011-0148
Telephone: (602) 650-1854
dpochoda@acluaz.org

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sinan Fazlovic, | CASE NO.: |
| Plaintiff, | COMPLAINT |
| vs. | |
| Maricopa County, a political subdivision; Maricopa County Sheriff's Office; Joseph Arpaio, individually and in his official capacity as Sheriff of Maricopa County and Jane Doe Arpaio, husband and wife; David Hendershott, individually and in his official capacity and Jane Doe Hendershott, husband and wife; Scott Freeman, individually and in his official capacity and Jane Doe Freeman, husband and wife; Tiffani Shaw, individually and in her official capacity and John Doe Shaw, husband and wife; Timothy Overton, individually and in his official capacity and Jane Doe Overton, as husband and wife; Mary Ellen Sheppard, individually and in her official capacity, and John Doe Sheppard, husband and wife; Defendant. | (JURY DEMAND) |

1

This is an action for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the First and Fourteenth Amendments to the United States Constitution, Article XX, par. 1 of the Arizona Constitution, and the Arizona Free Exercise of Religion Act, A.R.S. §§  41-1493 – 42- 1493.02.

## INTRODUCTION

1.      Plaintiff Sinan Fazlovic is a devout Muslim. As a result of adherence to his religious practice Sinan Fazlovic was discriminated against in his employment by Defendants.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367(a), 2201 and 2202, and 42 U.S.C. §§ 1983, 1988, and 2000(e)-5 *et seq*.

3.      All conditions precedent to jurisdiction under 42 U.S.C. § 2000(e)-5 have been met, to wit: Plaintiff, Sinan Fazlovic, timely filed charges of employment discrimination and retaliation alleging violations of Title VII of the Civil Rights Act of 1964, as amended, with the United States Equal Employment Opportunity Commission ("EEOC"), to wit EEOC Charge Nos. 540-2006-04059 and 540-2008-00155.  Plaintiff submitted his charges in a timely fashion and received a notice of right to sue as to each charge from the United States Department of Justice on or shortly after March 26, 2009. This action has been commenced within ninety (90) days of Plaintiff's receipt of the notice of right to sue as to EEOC Charge Nos. 540-2006-04059 and 540-2008-00155.

4.      The named Defendants, by virtue of their own acts and omissions or by virtue of the acts and omissions committed by one or more of their agents, employees or

representatives, as described herein, have conducted business or caused events to occur within the District of Arizona and, more particularly, within Maricopa County Arizona, as more particularly described herein so as to give rise to both subject matter and personal jurisdiction of this Court.

5.     Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6.     Sinan Fazlovic ("Plaintiff" or "Fazlovic") is and was at all times relevant, a male and practicing Muslim, a citizen of the United States and a resident of Maricopa County, State of Arizona.  Beginning on or about July 19, 2005 and during the relevant time that followed, Plaintiff was employed by Defendants, Maricopa County, Maricopa County Sheriff's Office and/or Joseph Arpaio, Sheriff of Maricopa County, as a Detention Officer in the Maricopa County Sheriff's Office.  For a period of time immediately following his position as a Detention Officer, and thereafter, Plaintiff held the position of Office Assistant Specialist from approximately October 3, 2007 until on or about July 27, 2008.  At all times relevant, Plaintiff was an "employee" of Defendants, Maricopa County, Maricopa County Sheriff's Office and/or Joseph Arpaio, Sheriff of Maricopa County.  Plaintiff has standing to bring this suit.

7.     At all times relevant, Defendant Maricopa County ("Defendant County" or "County"), was and is a political and legal entity existing under the laws of the State of Arizona and, together with Defendant Maricopa County Sheriff's Office ("Defendant MCSO" or "MCSO"), and Defendant Joseph Arpaio, Sheriff of Maricopa County, ("Defendant Arpaio," "Sheriff Arpaio" or "Arpaio")  were, during the relevant time

period, joint employers of Plaintiff or, alternatively, were separately the employers of Plaintiff for all purposes including Title VII of the Civil Rights Act of 1964, as amended, within the meaning of 42 U.S.C. §2000e(b). Defendant Arpaio is the final decision maker for the practices, policies and operation of the Maricopa County jail system.

8.     At all times relevant, Defendant Maricopa County Sheriff's Office ("Defendant MCSO" or "MCSO"), was and is a department, agency, office or branch of Defendant County, and by virtue thereof, Defendant MCSO is named as a Defendant herein. At all times relevant hereto, Defendant MCSO together with Defendant County and Sheriff Arpaio, were the joint "employer" of the Plaintiff or, alternatively, were separately the employers of Plaintiff for all purposes including Title VII of the Civil Rights Act of 1964, as amended, within the meaning of 42 U.S.C. §2000e(b).

9.     Defendant Joseph Arpaio, Sheriff of Maricopa County, ("Defendant is an elected public official of Maricopa County. Defendant Arpaio is named as a Defendant herein in both his official capacity and in his individual capacity. At all times relevant, Defendant Arpaio held the position of Sheriff of Maricopa County, Arizona and exercised supervisory authority over Plaintiff and the individual Defendants all of whom were directly or indirectly involved in one or more decisions affecting Plaintiff's employment status with the County, MCSO and/or Sheriff Arpaio, including, but not limited to, decisions regarding hiring, transfers, demotions, requests for religious accommodations, salary and job classifications, assignment of positions and/or assignment of job duties as well as the benefits, privileges, terms and conditions of Plaintiff's employment. As described within, in making these decisions and responding to Plaintiff's requests Sheriff

Arpaio and each individual Defendant failed to make reasonable accommodation for Plaintiff's sincerely held religious beliefs in the terms or conditions of his employment.

10.     At all times relevant, Arpaio had policy making and decision making authority over personnel policies affecting MCSO employees including Detention Officers. Defendant Arpaio, and each individual Defendant with authority over any personnel policies and decisions exercised their authority in a manner that discriminated against Plaintiff on the basis of his religious beliefs and failed to reasonably accommodate these beliefs. At all times relevant, Defendant Sheriff Arpaio, together with Defendants, County and MCSO, were the joint "employer" of the Plaintiff or, alternatively, were separately the employers of Plaintiff for all purposes including Title VII of the Civil Rights Act of 1964, as amended, within the meaning of  42 U.S.C. §2000e(b).   In addition, at all relevant times, Defendant Arpaio was acting in both his individual and official capacities as Sheriff and agent of Defendant County and MCSO and in the furtherance of his marital community.

11.     At all times relevant, Defendant David Hendershott, ("Defendant Hendershott") was and is employed as the Chief Deputy of Defendants, Arpaio and MCSO. Defendant Hendershott exercised supervisory authority over Plaintiff and over the individual Defendants other than Arpaio, all of whom were directly or indirectly involved in one or more decisions affecting Plaintiff's employment status with the County, MCSO and/or Sheriff Arpaio, including, but not limited to, decisions regarding hiring, transfers, demotions, requests for religious accommodations, salary and job classifications, assignment of positions and/or assignment of job duties as well as the benefits, privileges,

terms and conditions of Plaintiff's employment. Upon information, at all times relevant, Hendershott had policy making and decision making authority over personnel policies affecting Detention Officers including Plaintiff.    In addition, at all relevant times, Defendant Hendershott was acting in both his individual and official capacities as an agent of Sheriff Arpaio and Defendants County and MCSO and in the furtherance of his marital community.

12.    Upon information, at all times relevant, Defendant Scott Freeman, ("Defendant Freeman") was employed by and held the position of "Chief" of Defendants Sheriff Arpaio and MCSO, and exercised direct and/or indirect supervisory authority over Plaintiff and others, all of whom were directly or indirectly involved in one or more decisions affecting Plaintiff's employment status with the County, MCSO and/or Sheriff Arpaio, including, but not limited to, decisions regarding hiring, transfers, demotions, requests for religious accommodations, salary and job classifications, assignment of positions and/or assignment of job duties as well as the benefits, privileges, terms and conditions of Plaintiff's employment.  Plaintiff alleges that at all relevant times, Defendant Freeman was acting in both his individual and official capacities as an agent of Sheriff Arpaio and Defendants County and MCSO and in the furtherance of his marital community. Defendant Freeman had policy making and decision making authority over some personnel policies affecting Detention Officers including Plaintiff.

13.    At all times relevant, Defendant Tiffani Shaw, ("Defendant Shaw") was employed by and held the position of "Deputy Chief" of Defendants Sheriff Arpaio and MCSO. Defendant Shaw exercised direct and/or indirect supervisory authority over

Plaintiff and over MCSO employees who were directly or indirectly involved in one or more decisions affecting Plaintiff's employment status with the County, MCSO and/or Sheriff Arpaio, including, but not limited to, decisions regarding hiring, transfers, demotions, requests for religious accommodations, salary and job classifications, assignment of positions and/or assignment of job duties as well as the benefits, privileges, terms and conditions of Plaintiff's employment.  Plaintiff alleges that at all relevant times, Defendant Shaw was acting in both her individual and official capacities as an agent of Sheriff Arpaio and Defendants County and MCSO and in the furtherance of her marital community. Defendant Shaw had policy making and decision making authority over personnel policies affecting Detention Officers including Plaintiff.

14.     At all times relevant, Defendant Timothy Overton, ("Defendant Overton") was employed by and held the position of "Deputy Chief" of Defendants Sheriff Arpaio and MCSO. Defendant Overton exercised direct and/or indirect supervisory authority over Plaintiff and over MCSO employees who were directly or indirectly involved in one or more decisions affecting Plaintiff's employment status with the County, MCSO and/or Sheriff Arpaio, including, but not limited to, decisions regarding hiring, transfers, demotions, requests for religious accommodations, salary and job classifications, assignment of positions and/or assignment of job duties as well as the benefits, privileges, terms and conditions of Plaintiff's employment.  Plaintiff alleges that at all relevant times, Defendant Overton was acting in both his individual and official capacities as an agent of Sheriff Arpaio and Defendants County and MCSO and in the furtherance of his marital

community. Defendant Overton had policy making and decision making authority over personnel policies affecting Detention Officers including Plaintiff.

15.    At all times relevant, Defendant, Mary Ellen Sheppard ("Defendant Sheppard") was employed by and held the position of "Deputy Chief" of Defendants Sheriff Arpaio and MCSO. Defendant Sheppard exercised direct and/or indirect supervisory authority over Plaintiff and others, all of whom were directly or indirectly involved in one or more decisions affecting Plaintiff's employment status with the County, MCSO and/or Sheriff Arpaio, including, but not limited to, decisions regarding hiring, transfers, demotions, requests for religious accommodations, salary and job classifications, assignment of positions and/or assignment of job duties as well as the benefits, privileges, terms and conditions of Plaintiff's employment.  Plaintiff alleges that at all relevant times, Defendant Sheppard was acting in both her individual and official capacities as an agent of Sheriff Arpaio and Defendants County and MCSO and in the furtherance of her marital community.  Upon further information, Defendant Sheppard had policy making and decision making authority over personnel policies affecting Detention Officers and MCSO employees including Plaintiff.

## <u>GENERAL ALLEGATIONS</u>

16.    Plaintiff was born in Bosnia.  He immigrated to the United States in 1999 and became a naturalized citizen of the United States in or around December 2004.  At all times relevant Plaintiff was and is a devout member of the Muslim religion and faith.  As such, Plaintiff has maintained the practice of wearing a full-length beard in accordance with the religious tenets of the Muslim faith.

17.    Plaintiff applied for and was offered employment as a Detention Officer by Defendants, County, MCSO and/or Sheriff Arpaio on or about May 26, 2005.  At the time Plaintiff was offered employment, he had a full-length beard.

18.    Plaintiff asked representatives of County, MCSO and/or Sheriff Arpaio if he could keep his beard, explaining that it was and is an integral part of the Muslim faith that all males who are capable of growing facial hair, keep a full-length beard.  Plaintiff would not have applied for nor accepted the position if he had been told that he could not adhere to his religious tenets and wear a beard.

19.    Plaintiff was told that he would be allowed to retain his beard by representatives acting for or on behalf of one or more of the Defendants.  This was permitted by the existing departmental regulation. Not one individual Defendant indicated that wearing his beard would be a problem; the hiring was approved by Defendant Arpaio and other individual Defendants.

20.    Consequently, Plaintiff accepted employment as a Detention Officer and reported for his first day of employment on or about July 19, 2005 as a Detention Officer assigned to Detention Officer Academy.  Plaintiff attended Detention Officer Academy between approximately July 19, 2005 and September 22, 2005.

21.    Plaintiff reported to the Detention Officer Academy on or about July 19, 2005 with his full beard.  On or about July 27 - 29, 2005, Defendant Arpaio approached Plaintiff at work and asked him who he was.

22.    As a result Plaintiff was told to report to Defendant Shaw.  Defendant was told for the first time by Shaw that he would have to shave his beard, and that he had to do

so by the next day if he wanted to retain his job. Plaintiff reminded Shaw that he was assured when hired that he could maintain the beard in accordance with his faith. Without explanation, Defendant Shaw insisted that Plaintiff would have to shave his beard to conform to directions from Defendant Sheriff Arpaio; Shaw did not provide any written information.

23.     Plaintiff submitted a memo to Defendant Shaw to remind her of the original understanding when he was hired, and seeking approval to wear the beard as required by his religion. Defendant Shaw told Plaintiff that as a Detention Officer, he might be required to wear a Self-Contained Breathing Apparatus (SCBA) in emergency situations and that his beard prevented him from maintaining a proper seal of the SCBA against his face.  Plaintiff verbally offered to submit to a "fit test" to demonstrate that a proper seal could be maintained but his request was denied.

24.     As set out below, from that point on Plaintiff regularly offered to have a standard "fit test" in order to conclusively demonstrate that there was no conflict between adhering to his religious belief and any safety or security concerns.   The primary occupational safety agency in the country ("OSHA"), opined in 1998 that persons with beards could meet the standards for wearing a secure SCBA or equivalent device and work under smoke and fire conditions.

25.     On or about August 4, 2005, Plaintiff's written request for religious accommodation to retain his beard was denied by Defendant Shaw.  Upon information and belief, all Defendants approved or acquiesced in this denial.  Plaintiff than filed an internal grievance challenging the denial of his request for a religious accommodation.

26.    As set out below, from that date on Plaintiff filed several internal grievances and appeals about Defendants' failure to provide the required –and promised- religious accommodation and allow the beard. Plaintiff also filed several unsuccessful grievances and appeals about the failure of Defendants to permit or attempt to find comparable employment opportunity and pay after the denial of work in the jails as a Detention Officer.

27.    On or about August 4, 2005, Plaintiff's written request filed that same day was denied by Defendant Overton; on information & belief this was done at the direction or approval of Defendants Arpaio and Hendershott.

28.    Faced with the threat of termination for insubordination Plaintiff shaved his beard.  This caused Plaintiff great emotional distress and mental anguish given his deep religious beliefs and strong commitment to and practice of his Muslim faith.

29.    On or about August 24, 2005, Plaintiff appealed the denial of his grievance by filing it with Defendant Arpaio.  Plaintiff continued to offer to take a "fit test" to alleviate any concern Defendants had regarding use of SCBA in emergency situations.

30.    On or about September 22, 2005, Plaintiff was notified by Defendant MCSO and Deputy Chief Mike Olson that he had successfully completed Detention Officer Academy and was being assigned to Institutional, Services, Food Service Division as a Detention Officer.    Plaintiff continued to pursue his requests for a religious accommodation that would allow him to re-grow and keep a full-length beard.

31.    On or about September 23, 2005, Defendants County, MCSO and/or Arpaio, with the approval and acquiescence of Defendant Sheppard and, on information and

belief, the other Defendants, adopted a new policy regarding grooming standards, Policy GC-19 which, *inter alia*, prohibited any and all facial hair for employees of the MCSO.

32.     On or about January 25, 2006, Defendant Hendershott told Plaintiff that his appeal to Defendant Arpaio and request for religious accommodation was denied.  On about February 1, 2006, one or more of the Defendants notified Plaintiff that he would need to change his job position and cease being a Detention Officer, if he wished to wear a beard.

33.     On or about July 20, 2006, Plaintiff submitted a request for transfer to a Detention Officer position that involved the transport of prisoners, as opposed to working within a jail.  There would be little if any need for the wearing of an SCBA and Plaintiff was seeking to accommodate Defendants stated concerns with his religious needs; Defendants had not to that date, nor at any point after, assumed their legal responsibilities to avoid religious discrimination nor attempted a constructive accommodation for Plaintiff.

34.     Defendants denied Plaintiff's request for transfer on July 21, 2006.  On information and belief, this arbitrary decision was approved by or acquiesced in by one or more of the named Defendants.  Plaintiff was told that he was being denied because he was ineligible for a transfer since he had not been in his current position for one year. Defendants did not offer any explanation as to why this practice could not be altered to accommodate the religious needs and rights of Plaintiff.

35.     On or about October 3, 2006, Plaintiff requested another transfer and sought a position with Jail Intel. Plaintiff was qualified for this position and it would allow him to

wear a full-length beard.  That request was also denied without explanation by one or more of the named Defendants.

36.     On or about December 15, 2006, the extreme mental anguish and emotional distress that Plaintiff had been suffering since shaving his beard became unbearable. Despite the need for a job and concerns about support for his family, he could no longer violate the teachings and commandments of his religion, and Plaintiff began to re-grow his beard.

37.     On or about January 3, 2007, Plaintiff was informed by Defendant Shaw that he would be transferred to the Sheriff's Information Management Service ("SIMS") with no loss of pay. He was told to request reassignment to this vacant position and that he could keep his beard in that position.  Defendant Shaw advised Plaintiff that during this process, he would be granted a temporary waiver from Policy GC-19 regarding dress, appearance and grooming.

38.     Plaintiff was aware of other MCSO personnel who had been assigned to SIMS, and to Jail Intel, at Detention Officer pay, while wearing beards; there was no need for use of an SCBA in these positions. As a result, on or about February 2, 2007, Plaintiff requested that he be permanently assigned to SIMS or reassigned to Jail Intel duties at Detention Officer pay thereby enabling him to retain his then current rate of pay and benefits.

39.     On or about April 2, 2007, Defendant Sheppard denied Plaintiff's requests. On information and belief, Defendant Sheppard was acting at the request or approval of

Defendants Arpaio and Hendershott.  Defendant Sheppard informed Plaintiff that he had until April 11, 2007 to accept a transfer to another position at reduced pay.

40.     Continuing to pursue an accommodation despite the complete lack of cooperation or good faith by Defendants, on or about April 9, 2007, Plaintiff submitted another internal grievance seeking a position that would allow him to retain his beard.  He requested to be assigned to a location that was principally out-of-doors so that a SCBA would not be required (and repeated the request to be permitted to take a "fit test" or use a different brand of SCBA).  As a further alternative, Plaintiff renewed his request that he remain in SIMS on a permanent basis as a Detention Officer.  This internal grievance was denied on April 11, 2007 by Defendant Sheppard.  Upon information and belief, Defendants Arpaio and Hendershott approved or acquiesced in this denial.

41.     Plaintiff subsequently appealed this denial to Defendant Hendershott on or about April 23, 2007; however, it was denied by Defendant Hendershott on April 26, 2007 with no explanation.

42.     On or about September 7, 2006, Plaintiff filed his first charge of religious discrimination and retaliation with the EEOC.  Upon information and belief, a copy of this charge was mailed to one or more of the Defendants including, but not limited to, Defendants County, MCSO and Sheriff Arpaio.

43.     On or about October 1, 2007, Defendant Freeman advised Plaintiff to report to work clean shaven by October 8, 2007 or to accept a demotion to a lower paying job.  Defendant Freeman advised Plaintiff that if he did not do so, he would be terminated for neglect of duty, insubordination and violation of Department policies.  At the time

Plaintiff received notification from Defendant Freeman, Plaintiff was earning $18.74 per hour plus benefits. On information and belief, this demotion was approved by or acquiesced in by Defendants Arpaio, Hendershott and one or more of the other named Defendants.

44.    As seen by the above decisions and responses to Plaintiff's requests and grievances, Defendants failed to explore adequate pay and job alternatives for Plaintiff consistent with his religious needs. To the contrary, Defendants required as a condition of his employment that Plaintiff accept a significant reduction in pay and treated Plaintiff differently and worse than other MCSO employees who could not stay in a Detention Officer jail assignment. Defendants further took some of these steps in response to Plaintiff's internal grievances about his employment concerns and his filing an EEOC Complaint.

45.    On October 3, 2007, faced with termination, Plaintiff accepted a demotion to the position of Office Assistant Specialist at the rate of $13.06 per hour.   Upon commencing work as an Office Assistant Specialist, Plaintiff was not allowed to act as other Office Assistant Specialists, and was given menial tasks that were not part of the duties associated with that position. This predictably led to Plaintiff being harassed and criticized by coworkers and management.

46.    Plaintiff filed a second charge of discrimination and retaliation with the EEOC on or about October 11, 2007.  He also filed a grievance against Defendant Shaw alleging ongoing religious discrimination and failure to make religious accommodations.

Defendant Hendershott denied this grievance on or about October 22, 2007 without explanation.

47.     On or about December 3, 2007, Plaintiff was forced by one or more Defendants to accept an assignment to a non-detention officer position as a SIMS clerk on second shift; this change resulted in a further reduction of pay to the rate of $12.32 per hour.

48.     Continuing to seek accommodation, in July 2008, Plaintiff applied for the position of Inmate Classification Specialist. This would have allowed him to work as a Detention Officer while retaining his beard. The request was rejected without explanation by one or more of the Defendants.

49.     Defendants acted to and did impose intolerable and discriminatory work conditions which included, but were not limited to, humiliating and degrading job assignments; discriminating against Plaintiff as compared to non-Muslim employees with regard to accommodations, terms and conditions of employment; imposing substantial and involuntary reductions in pay and benefits as a condition of remaining employed; failing to respect Plaintiff's rights, well being, needs, requests and grievances and failing to reasonably accommodate Plaintiff after Defendants incorrectly deemed Plaintiff unable to perform the duties of a Detention Officer. On July 27, 2008, Plaintiff was constructively discharged because of Defendants' ongoing and continuous religious discrimination, creation of a religiously hostile work environment and failure to accommodate his religious beliefs as set forth herein.

50.     All of the Defendants acted with a malicious intent toward Plaintiff and with a callous disregard of his rights and well being, and escalated their improper and illegal actions toward Plaintiff after he complained about these actions including to the EEOC.

## COUNT I

## FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION (VIOLATION OF FREE EXERCISE OF RELIGION – 42 U.S.C. § 1983)

51.     Plaintiff incorporates by reference Paragraph 1-50 as fully set forth herein.

52.     MCSO policies which precluded Plaintiff and other practicing Muslims from wearing beards in observance of their religious faith.  Furthermore, Defendants also modified or changed polices which would have permitted reasonable religious accommodations consistent with those requested by Plaintiff and practicing Muslims. Thereby depriving Plaintiff of his right and privilege to work as a Detention Officer while still engaging in the free exercise of his religion.

53.     Each of the Defendants has violated Plaintiff's right to exercise his religion and to be free from religious discrimination by forbidding Plaintiff from wearing a beard without a proper or compelling reason while allowing other similarly situated employees who are non-Muslim to wear facial hair, and by reasonably accommodating non-Muslim employees who were not found suited for work as a Detention Officer in the terms and conditions of their employment including pay and failing to do so for Plaintiff.

54.     Each of the Defendants has violated Plaintiff's right to exercise his religion and to be free from religious discrimination and a religiously hostile work environment as guaranteed by the First and Fourteenth Amendments by punishing Plaintiff for making and persisting in his requests to wear a beard and for pursuing his rights by changing

MCSO policies after Plaintiff pointed out that they were inconsistent with Defendants' denial of his requests for religious accommodations and first indicating that his request would be granted; by refusing to allow Plaintiff to take a "fit test" to prove that he could wear the assigned SCBA in emergency situations or, alternatively, demonstrating that other SCBA were available and approved for use by Detention Officers; by requiring the Plaintiff to accept the demotion and reduction in pay; by creating a hostile work environment for Plaintiff because of his religion through these and other actions and constructively discharging Plaintiff by reason of Defendants' refusal to provide a religious accommodation.

55.     Defendants Arpaio, Hendershott, Freeman, Shaw, Overton and Sheppard are individually liable because they are and/or were, at all times relevant, responsible for supervising Plaintiff and establishing and/or maintaining the terms and conditions of his employment and for making, enforcing, and/or changing MCSO policies that effected Plaintiff's employment and the free exercise of his religious beliefs.  Further, Defendants Arpaio, Hendershott, Freeman, Shaw, Overton and Sheppard are personally liable because each, at various times, denied Plaintiff's request for religious accommodations, interfered with the free exercise of Plaintiff's religion and personally retaliated against Plaintiff for pursuing his rights in violation of clearly established law.

56.     As a direct and approximate result of Defendants' violations of the First Amendment, Plaintiff has suffered, is suffering and will continue to suffer damages in an amount subject to proof, is entitled to injunctive relief and declaratory relief against the Defendants County, MCSO and Sheriff Arpaio, attorneys' fees and costs from all

Defendants; and monetary and punitive damages from Defendants Arpaio, Hendershott, Freeman, Shaw, Overton and Sheppard.

## COUNT II

## FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (VIOLATION OF DUE PROCESS – 42 U.S.C. § 1983)

57.     Plaintiff incorporates by reference Paragraph 1-56 as fully set forth herein.

58.     At all times relevant, Plaintiff had a reasonable expectation of continued public employment as a Detention Officer by  the County, MCSO and/or Arpaio which constituted a protected property right not only in his job but also in promotional opportunities within the County and MCSO.

59.     At all times relevant, the County, MCSO and Arpaio had certain policies and procedures in place with regard to Plaintiff's public employment including, but not limited to, the right to pursue grievances, to be free from religious discrimination, to have employment and personnel decisions that would not be in violation of federal law and to not be deprived of property without due process of law.

60.     One, more or all Defendants, acting under color of law, individually and in concert with one another, and others whose identity is not presently known, violated Plaintiff's federally protected due process rights by, but not limited to, involuntarily forcing Plaintiff to relinquish his Detention Officer position by adopting, revising, enforcing or, alternatively, failing to enforce, policies and procedures which preclude practicing Muslims who are Detention Officers from wearing beards in observance of their religious faith.

61.     As a result, Plaintiff was involuntarily forced to relinquish and was constructively discharged from his position as a Detention Officer and the related pay and benefits because of the intolerable and discriminatory working conditions described herein.

62.     The act and omissions of the individual named Defendants complained of herein were undertaken by these Defendants in both their individual and official capacities and while acting within the course and scope of their employment or under such circumstances that subject them individually and in their official capacities along with their respective marital communities, to joint and several liability for damages.

## COUNT III

### ARTICLE 20, PARAGRAPH 1 ARIZONA STATE CONSTIUTION (VIOLATION OF THE RIGHT OF FREE EXERCISE OF RELIGION)

63.     Plaintiff incorporates by reference Paragraphs 1-62 as fully set forth herein.

64.     The Arizona State Constitution provides, in pertinent part:

> Perfect toleration of religious sentiment shall be secured to every inhabitant of this state and no inhabitant of this state shall ever be molested in person or property on account of his or her mode of religious worship, or lack of the same.

65.     Each of the Defendants has violated Plaintiff's right to exercise his religion and to be free from religious discrimination under Arizona law by refusing to accommodate Plaintiff's requests to wear a beard as required by his religious faith.

66.     Each of the Defendants has violated Plaintiff's right to exercise his religion and to be free from religious discrimination under Arizona law by punishing Plaintiff for making and persisting in his requests to wear a beard and for pursuing his rights by

changing MCSO policies after Plaintiff pointed out that they were inconsistent with Defendants' denial of his requests for religious accommodations and first indicating that his request would be granted; by refusing to allow Plaintiff to take a "fit test" to prove that he could wear the assigned SCBA in emergency situations or, alternatively, demonstrating that other SCBA were available and approved for use by Detention Officers; by requiring the Plaintiff to accept the demotion and reduction in pay; by creating a hostile work environment for Plaintiff because of his religion through these and other actions and constructively discharging Plaintiff by reason of Defendants' refusal to provide a religious accommodation.

67.    Defendants Arpaio, Hendershott, Freeman, Shaw, Overton and Sheppard are individually liable because they are and/or were, at all times relevant, responsible for supervising Plaintiff and establishing and/or maintaining the terms and conditions of his employment and for making, enforcing, and/or changing MCSO policies that effected Plaintiff's employment and the free exercise of his religious beliefs.  Further, Defendants Arpaio, Hendershott, Freeman, Shaw, Overton and Sheppard are personally liable because each, at various times, denied Plaintiff's request for religious accommodations, interfered with the free exercise of Plaintiff's religion and personally retaliated against Plaintiff for pursuing his rights in violation of Arizona law.

## COUNT IV

### TITLE VII – RELIGIOUS DISCRIMINATION

68.    Plaintiff incorporates by reference paragraph 1-67 herein.

69.     Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1) provides, in pertinent part, that it shall be an unlawful employment practice for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

70.     Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(2) further provides, in pertinent part, that it shall be an unlawful employment practice for an employer:

> to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

71.     Defendants' violated Title VII of the Civil Rights Act of 1964, as amended, by failing to accommodate Plaintiff's sincerely held and non-burdensome observation of his religious faith and further discriminated against Plaintiff in the terms and conditions of his employment on the basis of his religious practice and observance as alleged herein which includes, but is not limited to, punishing Plaintiff for making and persisting in his requests to wear a beard and for pursuing his rights by changing MCSO policies after Plaintiff pointed out that they were inconsistent with Defendants' denial of his requests for religious accommodations and first indicating that his request would be granted; by refusing to allow Plaintiff to take a "fit test" to prove that he could wear the assigned SCBA in emergency situations or, alternatively, demonstrating that other SCBA were

available and approved for use by Detention Officers; by requiring the Plaintiff to accept the demotion and reduction in pay; by creating a hostile work environment for Plaintiff because of his religion through these and other actions and constructively discharging Plaintiff by reason of Defendants' refusal to provide a religious accommodation.

72.     As a direct and approximate result of Defendants' violations of Title VII, Plaintiff has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and is entitled to injunctive relief and declaratory relief against Defendants County, MCSO and Sheriff Arpaio, attorneys' fees and costs of said Defendants as well as monetary damages.

## COUNT V

## TITLE VII - RETALIATION

73.     Plaintiff incorporates by reference paragraphs 1-72 as fully set forth herein.

74.     Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-3 provides in pertinent part:

> [I]t shall be an unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this chapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this sub-chapter.

75.     By virtue of the acts and omissions as set forth herein by the named, Defendants and others acting as agents or representatives of said Defendants, Defendants County, MCSO and Sheriff Arpaio engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e-3 by refusing reasonable transfer requests, punishing Plaintiff for making and persisting in his requests to wear a beard and for pursuing his rights by

changing MCSO policies after Plaintiff pointed out that they were inconsistent with Defendants' denial of his requests for religious accommodations and first indicating that his request would be granted; by refusing to allow Plaintiff to take a "fit test" to prove that he could wear the assigned SCBA in emergency situations or, alternatively, demonstrating that other SCBA were available and approved for use by Detention Officers; by requiring the Plaintiff to accept the demotion and reduction in pay; by creating a hostile work environment for Plaintiff because of his religion through these and other actions, by escalating their improper and illegal actions against Plaintiff in response to his complaints about these actions internally and to the EEOC, and by constructively discharging Plaintiff by reason of Defendants' refusal to provide a religious accommodation.

76.     By virtue of the foregoing violations of Title VII alleged above, Plaintiff has been damaged and has suffered economic and non-economic loss including mental anguish and emotional distress and is entitled to backpay, front pay and compensatory damages pursuant to 42 U.S.C. § 1981a and temporary and permanent injunctive relief.

## COUNT VI

### ARIZONA FREE EXERCISE OF RELIGION ACT

77.     Plaintiff incorporates by reference paragraphs 1-76 as fully set forth herein.

78.     The Arizona Free Exercise of Religion Act ("FERA") A.R.S. § 41-1493.01, provides, in pertinent part, that the "government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability only if it demonstrates that application of the burden to the person is both: (1) in furtherance of a

compelling governmental interest [and] (2) the least restrictive means of furthering that compelling governmental interest."

79.     By virtue of their actions above, by failing to allow Plaintiff to work as a Detention Officer with an alternative device or in a position with little need for such a device, and by failing to accommodate Plaintiff in the terms and conditions of his employment after denying him work as a Detention Officer, Defendants imposed a substantial burden on Plaintiff's religious exercise. The substantial burden on Plaintiff neither furthered a compelling governmental interest nor was the least restrictive means of furthering such an interest.

80.     Accordingly, Defendants have violated Plaintiff's rights under FERA and caused Plaintiff to incur economic and non-economic damages for which Defendants are jointly and severally liable.

WHEREFORE, Plaintiff prays for the following relief against the Defendants named herein:

A.     A declaration that the Defendants have committed prohibited practices made unlawful by: Title VII of the Civil Rights Act of 1964, as amended; the First and Fourteenth Amendments to the United States Constitution; the free exercise of religion clause of the Arizona State Constitution, and the Arizona Free Exercise of Religion Act.

B.     A declaration that the Defendants are jointly and severally liable to the Plaintiff for both economic and non-economic compensatory damages;

C.     A declaration that the individually named Defendants, acting in their individual capacity, are liable to the Plaintiff for punitive damages to the fullest extent

25

1  permitted by applicable law as to Counts I, II and VI of the Complaint;

2          D.        Appropriate preliminary and permanent injunctive relief;

3
          E.        An award of attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988(b)
4
5  and 2000e-5.

6          F.        Such other and further relief as the court deems just and proper.

7                    **A JURY TRIAL IS REQUESTED ON ALL ISSUES ENUMERATED**

8
   **IN THE COMPLAINT PURSUANT TO RULE 38 OF THE FEDERAL RULES OF**
9
10 **CIVIL PROCEDURE AND PURSUANT TO 42 U.S.C. § 1981a(c).**

11                    Dated this 29th day of May, 2009.

12                                                      MARTIN & BONNETT, P.L.L.C.
13

14

15                                                 By: s/Daniel L. Bonnett
                                                      Daniel L. Bonnett
16                                                    Susan Martin
                                                      Jennifer L. Kroll
17                                                    Theresa L. Seifert
18                                                    1850 N. Central Ave., Suite 2010
                                                      Phoenix, AZ  85004
19                                                    (602) 240-6900
20
                                                         -and-
21

22                                                    Daniel J.  Pochoda (#021979)
                                                      American Civil Liberties Union of Arizona
23                                                    77 East Columbus
                                                      Phoenix, AZ 85011-0148
24                                                    (602) 650-1854
25                                                    Attorneys for Plaintiff

26

27

28

                                            26