**SUSAN MARTIN (AZ Bar No. 014226)**
**DANIEL BONNETT (AZ Bar No. 014127)**
**JENNIFER KROLL (AZ Bar No. 019859)**
**THERESA L. SEIFERT (AZ Bar No. 023993)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com
tseifert@martinbonnett.com

**DANIEL POCHODA (AZ Bar No. 021979)**
**ACLU FOUNDATION OF ARIZONA**
77 East Columbus
Phoenix, AZ 85011-0148
Telephone: (602) 650-1854
dpochoda@acluaz.org
Attorneys for Plaintiff

**STEPHEN DICHTER (AZ Bar No. 004043)**
**ERIN E. BYRNES (AZ Bar No. 21015)**
**HARPER CHRISTIAN DICHTER GRAIF, P.C.**
2700 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 792-1700
sdichter@hcdglaw.com
ebyrnes@hcdglaw.com
Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Sinan Fazlovic, | Case No. CIV-09-1151-PHX-DKD |
| Plaintiff, | |
| vs. | JOINT CASE MANAGEMENT PLAN |
| Maricopa County, et al., | |
| Defendants. | |

1

Pursuant to the Court's Scheduling Order dated August 7, 2009, (Doc. 20), the parties conducted their Rule 26(f) conference on August 14, 2009. The parties submit this Joint Proposed Case Management Plan.

**1.    Parties attending the Rule 26(f) Meeting and assisting in developing the Case Management Report include:**

Theresa L. Seifert, Daniel L. Bonnett and Daniel Pochoda – Counsel for the Plaintiff, Sinan Fazlovic.

Erin E. Byrnes and Stephen M. Dichter – Counsel for the Defendants, Maricopa County, *et al.*

**2.    A short statement of the nature of the case (3 pages or less), including a description of each claim and defense:**

**a.    Plaintiff's Claims:**

Plaintiff Sinan Fazlovic is a devout Muslim and wears a beard in accordance with the religious beliefs.  In May 2005, while wearing a beard, Plaintiff was offered and accepted a position as a detention officer by Defendant Maricopa County Sheriff's Office ("MCSO").  After starting with MCSO, Plaintiff was told for the first time that he had to shave his beard in order to keep his detention officer position. Allegedly, his beard prevented him from maintaining a proper seal of the Self-Contained Breathing Apparatus against his face in emergency situations.  Plaintiff sought a religious accommodation for the beard and offered to take a "fit test" to demonstrate that there were devices available that he could safely use even if fire or smoke were present.   Defendants denied his request and never allowed such a test for Plaintiff.

After Defendants threatened to fire Plaintiff for insubordination, Plaintiff shaved his beard causing him great emotional distress, mental anguish and humiliation.  Plaintiff filed several grievances within MCSO seeking religious accommodation and all were denied.  In December 2006, Plaintiff began to re-grow his beard.  Plaintiff requested several alternate positions for which he was qualified and which would allow him to re-grow his beard because these positions were not located in the jail, and would therefore

meet Defendants' concerns about a beard. These positions would not have resulted in a significant loss of pay for Plaintiff, but Defendants denied these requests.

Plaintiff filed a charge of religious discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  In response to these complaints, Defendants further demoted Plaintiff and only permitted him to perform menial tasks. This led to harassment and criticism by his coworkers and management. After filing another internal grievance and a second EEOC complaint, this time for discrimination and retaliation, Plaintiff was forced to accept yet another demotion and eventually Plaintiff was constructively discharged by Defendants by Defendants' failure to allow reasonable accommodation including in his pay and by creating a religiously hostile work environment.  As alleged by Plaintiff, Defendants' actions and discrimination violated: the First and Fourteenth Amendments of the United States Constitution, Article 20 of the Arizona State Constitution, Title VII of the Civil Rights Act of 1964, as amended, and the Arizona Free Exercise of Religion Act.

**b.    Defendants' Claims and Defenses:**

Plaintiff is a Muslim, who believes his religion compels him to wear a full beard. He began work as a detention officer with the Maricopa County Sheriff's Office ("MCSO") in July of 2005. One of the most important duties of MCSO detention officers is ensuring the welfare of inmates.  Consequently, an essential job function of the detention officer is the ability to respond to emergency situations, and to be able to lift and carry inmates during crisis situations. All detention officers must be able to don a self-contained breathing apparatus (SCBA) in the event of emergency. MSCO detention officers must be able to wear a very particular sort of SCBA – namely one that is suited for use in situations posing an immediate danger to life or health (IDLH).

MCSO's use of SCBAs is governed by state and federal law and regulation. The Occupational Health and Safety Administration (OSHA) dictates that only SCBAs that have a full facepiece and can be used for a minimum of thirty minutes be used in situations involving an IDLH.  OSHA regulations in place at the time of Plaintiff's

employment precluded an employer from allowing an employee to have facial hair coming between the sealing surface of the mask and the face. *See* 29 C.F.R. § 1910.134(g)(1)(i)(A). And, MCSO's policies, both at the time of Plaintiff's hiring, and throughout his employment, precluded detention officers from having any facial hair other than a mustache. Based on the relevant law, regulations, and policies, Plaintiff's requests for an exemption from the facial hair requirements were denied. Defendants did, however, repeatedly offer to move Plaintiff to a full-time position where he could retain his beard and continue employment with MCSO. Plaintiff did not accept any of these alternative positions.

Plaintiff alleges that the County Defendants discriminated against him on the basis of religion and retaliated against him after he filed a charge of discrimination with the EEOC. Plaintiff must show three elements to establish a prima facie religious discrimination claim: (1) he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) he informed MCSO of the belief and conflict; and (3) MCSO threatened him or subjected him to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements." *Tiano v. Dillard Dep't Stores, Inc.,* 139 F.3d 679, 681 (9th Cir.1998). Upon such a showing, the burden shifts to the County Defendants to show that they initiated good faith efforts to reasonably accommodate Plaintiff, or to show an accommodation could not be given without undue hardship. *Tiana*, 139 F.3d at 681. An employer cannot be held liable under Title VII when an accommodation the employee seeks would require the employer to violate state or federal law. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999); *see also Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384-85 (9th Cir. 1984) (holding that employer demonstrated undue hardship when requested accommodation might subject employer to liability for violating California's OSHA standards).

Plaintiff must demonstrate the following elements on his retaliation claim: (1) that he was engaged in a protected activity, (2) that he was then subjected to an adverse employment action, and (3) a causal link between the protected activity and the adverse

employment action. Assuming Plaintiff establishes a prima facie retaliation claim, the burden shifts to Defendants to show a legitimate, non-retaliatory reason for the adverse action; upon such a showing Plaintiff would have to demonstrate pretext. *Wrighten v. Metropolitan Hosps. Inc*., 726 F.2d 1346 (9th Cir. 1984).

The County can only be held liable if it had a custom, policy or practice that resulted in the violation of Plaintiff's civil rights. *See, generally, Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). Further, the individual County Defendants are entitled to qualified immunity because their actions were objectively reasonable in this case. *Saucier v. Katz,* 533 U.S. 194, 202 (2001) (internal citation omitted). Without personal involvement in the alleged violative conduct, there is no liability. *See Rizzo v. Goode*, 423 U.S. 362 (1976).

**3.    A description of the principal factual and legal disputes in the case:**

The parties believe that the following issues are genuinely in dispute. At this time, it does not appear that these can be narrowed by stipulation or motion:

   **a.    Plaintiff's Factual and Legal Issues in Dispute:**

   1.    Whether one or more Defendants: (1) unreasonably required Plaintiff to relinquish his job as a detention officer, and/or (2) interfered with the free exercise of Plaintiff's religion, and/or (3) failed to provide Plaintiff an adequate alternative position without significant loss of pay, and/or (4) created a religiously hostile work environment and/or constructively discharged Plaintiff in whole or in part in retaliation for his complaints to the EEOC, thereby discriminating against Plaintiff on the basis of his religion, failing to reasonably accommodate his religious practices, retaliating against Plaintiff for filing religious discrimination complaints, demoting and/or and constructively firing Plaintiff, in violation of: the First Amendment to the United States Constitution and Article 20 of the Arizona Constitution; the due process clause of the Fourteenth Amendment to the United States Constitution; Title VII of the Civil Rights Act of 1964, and the Arizona Free Exercise of Religion Act.

2. What relief, Plaintiff may be entitled to obtain if he prevails on one or more of his claims and, if he does prevail, which Defendants may be liable to Plaintiff for damages and/or other relief.

**b.  Defendants' Factual and Legal Issues in Dispute:**

1. Whether Defendants made efforts to reasonably accommodate Plaintiff's request to stay employed and wear a beard;

2. Whether Plaintiff's request to continue to wear a beard and work in his capacity as a detention officer would have posed an undue burden on MCSO's efforts to provide for the safety of jail inmates and employees;

3. Whether Defendants were precluded by state and/or federal law or regulation from providing any exemptions to their facial hair policy;

4. Whether Defendants took any adverse employment action against Plaintiff, and, if so, whether there is a causal link between Plaintiff's complaints regarding religious discrimination and any such employment action;

5. Whether Plaintiff's state law claims are barred by his failure to serve a notice of claim, as required by A.R.S. § 12-821.01(A);

6. Whether Plaintiff exhausted all of his claims, as required by Title VII, prior to filing this lawsuit;

7. Whether any of Plaintiff's claims are barred by any of the applicable statutes of limitation;

8. Whether Defendants had a legitimate, non-discriminatory reason for enforcing their policy precluding detention officers from wearing beards with regards to Plaintiff;

9. Whether Plaintiff's requested accommodation(s), if granted, would have required Defendants to violate state or federal law;

10. Whether Defendants are entitled to qualified immunity from Plaintiff's claims;

11. Whether each of the individually named Defendants personally participated in the alleged constitutional violations subjecting them to individual liability;

12. Whether Plaintiff can establish that the working conditions at MCSO were so intolerable that they would have caused a reasonable employee to resign;

13. Whether Defendants' policies regarding facial hair as they related to a detention officer's ability to wear a MCSO SCBA promoted a compelling government interest, and whether they were the least restrictive means of promoting that interest;

14. Whether the County had a custom, policy or practice that resulted in the violation of Plaintiff's civil rights, subjecting it to liability for Plaintiff's § 1983 claims; and

15. Whether Defendants' conduct demonstrated an evil motive or intent, or involved reckless or callous indifference to Plaintiff's federally protected rights;

**4.     The jurisdictional basis for the case:**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367(a), 2201 and 2202, and 42 U.S.C. §§ 1983, 1988, and 2000(e)-5 *et seq*.

**5.     Parties which have not been served and an explanation of why they have not been served; and any parties which have been served but have not answered or otherwise appeared:**

All Defendants have been served, or accepted service.

**6.     A statement of whether any party expects to add additional parties to the case or otherwise to amend the pleadings:**

Plaintiff does not anticipate adding any additional parties. Defendants will be filing the appropriate pleading(s) to add Plaintiff's wife for the purposes of binding the community property, in the event Defendants are awarded fees in the case. The parties also do not anticipate the need to amend the pleadings.

**7.     A listing of contemplated motions and a statement of the issues to be decided by these motions (including motions under Federal Rules of Civil Procedure 702, 703, 704, and 705):**

Plaintiff does not presently contemplate filing any motions, however, as discovery progresses, Plaintiff will evaluate if any dispositive or other motions may be appropriate.

Defendants anticipate filing a motion for judgment on the pleadings related, at a minimum, to Plaintiff's noncompliance with Arizona's notice of claim statute, A.R.S. § 12-821.01(A). Defendants also anticipate they will file a motion for summary judgment, testing the substance of Plaintiff's claims, at some point in the litigation.

**8:    The status of related cases pending before other courts or other judges of this Court:**

The parties do not believe there are any related cases pending before other courts or other judges of this Court.

**9.    A statement of when the parties exchanged Federal Rule of Procedure 26(a) initial disclosures:**

The parties will exchange Rule 26(a) Initial Disclosure Statements on or before September 4, 2009.[1]

**10.    A discussion of necessary discovery, including:**

    **a.    The extent, nature, and location of discovery anticipated by the parties;**

The parties will engage in normal discovery permitted by the Federal Rules of Civil Procedure including, but not limited to, depositions, interrogatories, requests for admission, and document requests, on all claims and defenses asserted in this case.

    **b.    Suggested changes, if any to the discovery limitations imposed by the Federal Rules of Civil Procedure and LRCiv 16.2 of the Rules of Practice for the United States District Court for the District of Arizona ("Local Rules");**

The parties do not anticipate the need to change any of the discovery limitations, but have agreed to work together in the event such a need arises.

    **c.    The number of hours permitted for each deposition, unless extended by agreement of the parties;**

---

[1] The parties have agreed to enter a Stipulation (which they expect to submit to the Court in the near future) indicating that by participating in initial disclosure or discovery, in the event that discovery proceeds while any motion forwarding the reserved notice of claim defense is being briefed, argued, or under advisement in this case, Defendants are not waiving any right to raise issues regarding a notice of claim defense to Plaintiff's state/common law claims, in spite of the holding in *Jones v. Cochise Co.*, 218 Ariz. 372, 380-81, ¶¶ 27-29, 187 P.3d 97, 105-06 (App. 2008). The parties further agree that by entering this stipulation, Plaintiff is not agreeing that any such defense has merit nor is he waiving any right to oppose any issues related to Defendants' notice of claim defense.

The parties do not anticipate exceeding the maximum number of hours permitted for each deposition as allowed under the Rules.

**11.     A discussion of any issues relating to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced (*see* Rules 16(b)(5), 26(f)(3)).**

The parties have discussed the discovery of electronically stored information. At present, Defendants may have email communications related to the issues in this case that are electronically stored information and that may be the subject of discovery. Defendants will attempt to produce this discovery in native electronic format. If any issue arises regarding email discovery, the parties will work together to resolve these issues.

**12.     A discussion of any issues relating to claims of privilege or work product (*see* Rules 16(b)(6), 26(f)(4));**

Defendants may have some communications subject to claims of privilege or work product. Defendants will deal with claims of privilege via the use of a privilege log. In the event a discovery issue arises with respect to claims of privilege, or any other discovery issue, the parties will only seek Court guidance after attempting to resolve the issue personally, and informally, as required by the Rules.

**13.     Proposed specific dates for each of the following (deadlines should fall on a Friday unless impracticable):**

    **a.     Deadline for the completion of fact discovery – June 4, 2010**

    **b.     Dates for complete disclosures of expert testimony under Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure;**

The parties will simultaneously exchange their respective affirmative experts[2] by **February 26, 2010.**

The parties will simultaneously exchange their respective responsive experts[3] by **March 26, 2010.**

Rebuttal Experts – **April 30, 2010**

---

[2] The parties use the term "affirmative experts" to refer to experts which either side intends to use as part of their case in chief.

[3] "Responsive experts" are those which, at the time of disclosure, the parties anticipate using primarily as experts to provide opinions responding to the other side's "affirmative experts." The designation of these experts as "responsive" shall not, however, have the effect of precluding the parties from using a "responsive expert's" opinions or testimony in that party's case in chief.

  c. **Deadline for completion of all expert depositions:**

  **May 21, 2010**

  d. **Deadline for filing dispositive motions:**

  **July 9, 2010**

  e. **Date by which the parties shall have engaged in good faith settlement talks:**

  **January 29, 2010**

**14.** **Whether a jury trial has been requested and whether the request for a jury trial is contested (if the request is contested, set forth the reasons).**

Plaintiff and Defendants have requested a jury trial.

**15.** **The estimated length of trial and any suggestions for shortening the trial.**

The parties anticipate the length of trial will be 5-7 days. Neither party currently has any suggestion for shortening the trial, however, as discovery progresses, the parties will explore possible ways to shorten the trial which may include, for example, stipulating to exhibits or facts.

**16.** **The prospects for settlement, including any request of the Court for assistance in settlement efforts such as a request that the matter be referred to another magistrate judge for a settlement conference:**

The parties do not believe that this matter is currently in a settlement posture. As discovery progresses, however, the parties will re-evaluate the prospect of settlement and, if it appears that formal settlement negotiations may be prudent, the parties will select a mutually agreeable private mediator or, should they be unable to reach an agreement on the selection of a mediator, will jointly request that this matter be referred to a Magistrate Judge to conduct a settlement conference.

**17.** **Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1.**

The parties do not believe there are currently any other matters that will aid in the resolution of this case.

  DATED this 1st day of September, 2009.

             MARTIN & BONNETT, P.L.L.C.

By: s/Theresa L. Seifert
Daniel L. Bonnett
Susan Martin
Jennifer L. Kroll
Theresa L. Seifert
1850 N. Central Ave., Suite 2010
Phoenix, AZ  85004
(602) 240-6900

-and-

By: s/Daniel J. Pochoda
Daniel J.  Pochoda
American Civil Liberties Union of Arizona
77 East Columbus
Phoenix, AZ 85011-0148
(602) 650-1854

Attorneys for Plaintiff

HARPER CHRISTIAL DICHTER GRAIF, P.C.

By: s/Erin E. Byrnes
Stephen M. Dichter
Erin E. Byrnes
2700 N. Central Ave., Suite 1200
Phoenix, AZ  85004
(602) 792-1700

Attorneys for Defendants