**SUSAN MARTIN (AZ#014226)**
**DANIEL BONNETT (AZ#014127)**
**JENNIFER KROLL (AZ#019859)**
**MARK A. BRACKEN (AZ#026532)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com
mbracken@martinbonnett.com

**DANIEL POCHODA (AZ# 021979)**
**ACLU FOUNDATION OF ARIZONA**
3707 N. 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
dpochoda@acluaz.org

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Sinan Fazlovic,<br><br>                    Plaintiff,<br><br>vs.<br><br>Maricopa County, a political subdivision; Maricopa County Sheriff's Office; Joseph Arpaio, individually and in his official capacity as Sheriff of Maricopa County and Jane Doe Arpaio, husband and wife; David Hendershott, individually and in his official capacity and Jane Doe Hendershott, husband and wife; Scott Freeman, individually and in his official capacity and Jane Doe Freeman, husband and wife; Tiffani Shaw, individually and in her official capacity and John Doe Shaw, husband and wife; Timothy Overton, individually and in his official capacity and Jane Doe Overton, as husband and wife; Mary Ellen Sheppard, individually and in her official capacity, and John Doe Sheppard, husband and wife;<br>                    Defendants. | NO. CIV-09-1151-PHX-DKD<br><br>**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**<br><br>**(Oral Argument Requested)** |

Pursuant to the Court's August 30, 2010 Order (Doc. # 106), Plaintiff hereby submits his Motion to Compel discovery regarding communications with, copied to or in the presence of Attorney Clarisse McCormick ("Ms. McCormick"), or any other attorney in the Maricopa County Attorney's Office (collectively, "Internal Counsel"), relating to Plaintiff's requests for a religious accommodation, Defendants' handling of and response to those requests and any documents generated by Defendants or Internal Counsel in response to or in consideration of those requests. The parties have meet and conferred in good faith, pursuant to Fed.R.Civ.P. 37(a)(1) and L.R.Civ. 7.2(j) pursuant to the Court's July 20, 2010 Revised Case Management Order (Doc. # 94) and briefly outlined the issues relating to the current discovery dispute for the Court in a conference call on August 30, 2010 (Doc. # 106). Examples of the discovery dispute in the form of deposition questions and written discovery requests and responses relating to Defendants' affirmative defenses at issue by this motion are set forth in a separate written statement pursuant to L.R.Civ. 37.1(a). It is Plaintiff's contention, however that Defendants have waived attorney-client privilege and work product on a subject-wide basis relating to Mr. Fazlovic's requests for religious accommodation. Accordingly, additional deposition questions and written discovery on the subject remains and will likely be the subject of future disputes absent resolution by this Court. Accordingly, those issues cannot be set forth in a separate written statement at this time. See L.R.Civ. 37.1(b).

## I.    FACTUAL BACKGROUND

As the Court will recall, Plaintiff, Sinan Fazlovic, has alleged in his Complaint that he is a devout Muslim male, who wears a full beard in accordance with the tenets of his religious faith. (Doc. # 1, ¶ 16; Answer ¶ 16.) Plaintiff worked for the Maricopa County Sheriff's Office ("MCSO") from July 19, 2005 until on or about July 27, 2008. (*Id.* ¶ 6 & 49.)

Despite having a beard when he was hired, approximately two weeks after Mr. Fazlovic started his training with MCSO, he was told that he would have to shave his beard. Defendants claim this directive was given to Mr. Fazlovic because his beard

violated MCSO's grooming policy and presented a safety issue because he might be required to use a Self-Contained Breathing Apparatus ("SCBA") in an emergency situation. Defendants also take the position that given the physical environment in which Detention Officers work and perform their job duties, only SCBA with tight-fitting face pieces can be used. Defendants further argue that any facial hair other than a moustache is prohibited when using a SCBA with a tight-fitting face piece. Defendants claim all Detention Officers, including Plaintiff, must be able to use this equipment as part of the essential functions of the position.[1] (*Id.* ¶ 24-25.)

Mr. Fazlovic made multiple requests to Defendants for religious accommodation. He offered to take a "fit test" to demonstrate that he could properly wear and use the specific SCBA that Defendants argue was the type he had to be able to use as part of his job. (*Id.* ¶ 24.) He made his first request shortly after he was hired. On or about July 21, 2005, as directed, Mr. Fazlovic placed his request to retain his beard in writing to Defendant, Tiffani Shaw, a Commander in MCSO who regularly dealt with employee matters. (*Id.* ¶ 23.) At or around this time, Mr. Fazlovic also requested that alternate types of SCBA be considered. Defendant Shaw along with MCSO Captain, James Mason, reviewed, investigated, evaluated, discussed and communicated with the Defendants, other MCSO decision-makers, parties outside the County and MCSO, and Internal Counsel regarding Plaintiff's request for religious accommodation.[2] Mr. Fazlovic's

---

[1] Plaintiff disputes each of these contentions and that use of an SCBA is an essential job function for all Detention Officers. It is Mr. Fazlovic's position that when he requested a religious accommodation, Defendants did not properly consider and evaluate the requirements, use, need, availability and alternate types of SCBA available for use by Plaintiff or whether he could be assigned to duties that would have allowed him to retain his beard and remain a Detention Officer. The Court need not resolve these issues in order to rule on this motion, however, as explained herein, they are directly relevant to Plaintiff's claims and Defendants' defenses.

[2] Ms. Shaw and Mr. Mason have each been deposed along with Defendant, Scott Freeman, an MCSO deputy chief. Defendants Mary Ellen Sheppard, Larry Hendershott, Joseph Arpaio, as well as Clarisse McCormick and others whom Plaintiff believes were decision-makers or, alternatively, influenced decision-makers concerning whether or not to grant Mr. Fazlovic's numerous requests for religious accommodations have yet to be deposed.

request for religious accommodation was denied. On or about August 24, 2005, Plaintiff filed a grievance with Defendant Arpaio. (*Id.* ¶ 29.) At or around this time, Mr. Fazlovic mentioned to Defendants that he was aware of other instances where facial hair was permitted for other MCSO employees as well as public employees in other jurisdictions who also used SCBA respirators. See Plaintiff's Partial Statement of Disputed Discovery in Support of Plaintiff's Motion to Compel (L.R.Civ. 37.1) (hereinafter, "L.R.Civ. 37.1 Statement"), at ¶ 6, pp.4-6. This grievance was denied. Faced with Defendants' threat of termination for insubordination, which meant loss of income as well as much needed medical insurance for himself and his dependents, Plaintiff was forced to shave off his beard, contrary to his religious beliefs, in order to save his job and medical benefits.[3]

Although Plaintiff eventually shaved his beard, he continued to make requests for religious accommodation so that he could keep his job and re-grow his beard. Defendants denied these requests. On or about July 20, 2006, Mr. Fazlovic asked to be transferred to a Detention Officer position transporting prisoners, as opposed to working in the jail itself, because he believed there was no chance of ever having to wear a SCBA. Defendants also denied this request. Defendants have claimed that all requests were denied after thorough consideration and evaluation. (L.R. Civ. 37.1 Statement, at ¶ 1.)

Plaintiff filed his first charge of religious discrimination and retaliation with the EEOC on September 7, 2006. On October 3, 2006, Plaintiff applied for another position with MCSO Jail Intel so he could re-grow his beard, but this request was also denied. (Doc. # 1 at ¶ 35). Mr. Fazlovic began to re-grow his beard on or about December 15, 2006 because he believed that he could no longer violate the teachings and commandments of his religion. (*Id.* ¶ 36). Approximately, two weeks later, Defendant Shaw informed Plaintiff that he would be transferred to the Sheriff's Information Management Service ("SIMS") without any loss of pay. Plaintiff was also told that he could request a permanent reassignment to this position, which would allow him to keep

---

[3] Plaintiff has yet to be deposed but will testify about the importance of his income and medical benefits to his family.

his beard and that he would be granted a temporary waiver from MCSO Policy GC-19 regarding grooming, dress and appearance. (*Id.* ¶ 37). Mr. Fazlovic did, in fact, request permanent reassignment to this position; however, in April 2007, Defendants denied his request. (*Id.* ¶ 38-39). In accordance with the tenets of his religious faith, Mr. Fazlovic continued to wear a beard. (*Id.* ¶ 36, 43).

On or about October 1, 2007, Defendants again advised Plaintiff that he had to report to work clean shaven by October 8, 2007, accept a demotion to a lower paying job or be terminated for insubordination, neglect of duty, and violation of Department policies. (*Id.* ¶ 43). Faced once again with the threat of termination, on or about October 3, 2007, Mr. Fazlovic, reluctantly and under protest, accepted the demotion to the position of Office Assistant Specialist with a reduction in pay so he could keep medical benefits for himself and his dependents. (*Id.* ¶ 45). Approximately a week later, or or about October 11, 2007 Mr. Fazlovic filed his second EEOC charge, claiming retaliation and continuing religious discrimination. (*Id.* ¶ 46). He also filed an internal grievance with Defendants alleging continuous and ongoing religious discrimination and failure to make reasonable religious accommodations. (*Id.* 1 ¶ 46). Defendants again denied Plaintiff's internal grievance. (*Id.*)

On or about December 3, 2007, Defendants again forced Plaintiff to accept an assignment as a SIMS clerk if he wanted to keep his beard. (*Id.* ¶ 47). Mr. Fazlovic continued to seek an accommodation and in July 2008, he applied for a position as an Inmate Classification Specialist. This position would have allowed him to remain a Detention Officer with commensurate pay and keep his beard. (*Id.* ¶ 48). However, Defendants again rejected this request. (*Id.*) Mr. Fazlovic has argued that due to the intolerable, humiliating, and degrading job assignments given him and being forced to accept a demotion and reduced pay, he was forced to leave his job and, accordingly, was constructively discharged effective July 27, 2008. (*Id.* ¶ 49).

Plaintiff filed this religious discrimination and retaliation suit against Defendants on May 29, 2009. (Doc. # 1.) Plaintiff has claimed that Defendants have violated the

First and Fourteenth Amendments as well as Title VII of the Civil Rights Act of 1964, as amended.[4]  In response to Plaintiff's claims, Defendants have asserted numerous affirmative defenses including, but not limited to, qualified immunity, "good faith efforts to accommodate Plaintiff's religious beliefs and practices," "that [p]roviding the requested accommodation would have resulted in an undue hardship to Defendants' business" and that requiring Defendants to accommodate Mr. Fazlovic's request would force them to violate the Establishment Clause of the United States Constitution.  (Doc. # 17.) See also L.R.Civ. 37.1 Statement, at ¶ 1; Answer, at ¶ 70, subparagraphs D.G, H, I & J).  Plaintiff has served Defendants with written discovery and taken the depositions of some Defendants and key witnesses concerning, *inter alia*, these affirmative defenses.  See L.R. Civ 37.1 Statement, at ¶¶ 1-7.  There is no trial date.  The discovery deadline is currently set for November 12, 2010.  (Doc. # 94.)

## II.  LEGAL ARGUMENT

### A.  Defendants have waived attorney-client privilege regarding communications between Maricopa County Sherriff's Office employees and Internal Counsel by virtue of their affirmative defenses.

Defendants' affirmative defenses are essentially grounded on the premise that they exercised good faith in thoroughly reviewing, investigating, evaluating, discussing Mr. Fazlovic's requests for religious accommodation and after considering all information and available alternatives, came to only one possible conclusion – that they could not grant any of Mr. Fazlovic's requests because state and federal regulations and other business considerations made it impossible to do so. (L.R.Civ. 37.1 Statement, at ¶¶ 1, 6 & 8.)

Defendants claim they came to this conclusion after Defendant Shaw and James Mason conducted a thorough review of OSHA and Arizona Department of Occupational

---

[4] Plaintiff also asserted various state law claims which the Court has dismissed along with MCSO, as a named defendant. (Doc. # 86)

Safety and Health ("ADOSH") regulations regarding required use of respirators in the workplace, gathering and considering information concerning how other public employers dealt with similar requests to accommodate facial hair for religious or medical reasons, and communicating and discussing these issues among themselves and other MCSO decision-makers and with Internal Counsel. (Id. at ¶¶ 1, 5, 6 & 8.) Ms. McCormick was copied on various email communications and other written memoranda. (Id. at ¶ 7.) Most of these communications and documents are contained in Defendants' Privilege Log. (Id. at ¶7.)

In addition, there are at least two known occasions where meetings were held in September 2005 to discuss Mr. Fazlovic's first request for religious accommodation at which Internal Counsel was present. See (Id. at ¶ 6.) In addition, there is evidence of other discussions and communications with or in the presence of Internal Counsel on the subject of whether to grant Mr. Fazlovic's various requests for religious accommodations. The emails and meeting cover a period ranging from July 2005 to as late as December 2008. (Id. at ¶¶ 7 & 8.) Defendants claim much if not all communications with or copied to Internal Counsel are not discoverable due to the attorney-client privilege or because they amount to attorney work product. (Id. at ¶ 7.)

By virtue of asserting affirmative defenses, however, Defendants have injected issues into this litigation concerning what they knew and considered in reaching their conclusions and decisions concerning Mr. Fazlovic's religious accommodation requests. In other words, even if the source of information they considered in making recommendations and decisions came from Internal Counsel, Defendants have waived any claim of attorney-client privilege and work product. Plaintiff is entitled to discover all

communications including those with or in the presence of Ms. McCormick or other Internal Counsel relating to Plaintiff's request for a religious accommodation as well as the numerous emails and other documents on which she was copied. *See for example*, *Walker v. County of Contra Costa*, 227 F.R.D. 529, 532-538 (N.D.Cal. 2005) (finding defendants waived attorney-client privilege when they asserted the County's internal pre-litigation investigation as an affirmative defense); *Fox v. California Sierra Financial Services*, 120 F.R.D. 520, 530 (N.C. Cal. 1988) (finding defendant waived attorney-client privilege when it placed privileged communications at issue in the lawsuit through an affirmative defense); *Hearn v. Rhay*, 68 F.R.D. 574, 580 (E.D.Wash. 1975) (finding defendants waived attorney-client privilege by asserting qualified immunity as an affirmative defense); *State Farm Mutual Automobile Insurance Company v. Lee*, 199 Ariz. 52, 13 P.3d 1169 (2000) (*citing Hearn* and Restatement (Third) of Law Governing Lawyers § 80 (Reporters Note, cmt.b.) (holding defendant waived attorney-client privilege when it implicitly asserted the advice of counsel as a defense).[5]

The facts presented by Defendants' affirmative defenses regarding the claim of qualified immunity and the alleged good faith defense on the part of Defendants with regard to Plaintiff's request for a religious accommodation are analogous to the facts in *State Farm* and the other cases cited above. The plaintiffs in *State Farm* alleged that State Farm acted in bad faith in rejecting their underinsured and uninsured motorist claims

---

[5] Plaintiff has been unable to find any published or unpublished Ninth Circuit authority directly on point on the issue of waiver of attorney-client privilege in the context of a religious accommodation claim. Plaintiff believes that *State Farm* is persuasive authority, however, because the Arizona Supreme Court analyzed and essentially adopted *Hearn*, which appears to be the seminal federal district court opinion on the issue of waiver of privilege by assertion of the affirmative defense of qualified immunity.

because State Farm's interpretation of state law was unreasonable. State Farm alleged that their claims managers held a good faith belief in their interpretation of applicable state law. The plaintiffs in *State Farm* sought discovery of files and other documents relating to State Farm's rejection of their claims including communications between claims managers and State Farm's attorneys. *State Farm*, 199 Ariz. at 54, 13 P. 3d at 1171. State Farm opposed disclosure, arguing that the documents were protected by the attorney-client privilege. *Id*. Plaintiffs argued that State Farm "injected the subjective good faith beliefs and mental state of its claims people as an issue in the case, thus implicitly waiving the privilege." *Id*., 199 Ariz. at 55, 13 P. 3d 1172.

The trial court determined that State Farm had impliedly waived the attorney client privilege, because the extent of the decision-makers knowledge, including legal knowledge, was impliedly one of the bases for State Farm's defense. *Id*., 199 Ariz. at 55-56, 13 P. 3d 1172-73. The Arizona Court of Appeals reversed. On review, the Supreme Court of Arizona vacated the appellate decision and approved the trial judge's order granting the plaintiff's motion to compel. *Id*., 199 Ariz. at 67, 13 P. 3d 1184. The supreme court concluded that in cases in which the litigant claiming the privilege relies on and advances, as a claim or defense, a subjective and allegedly reasonable evaluation of the law -- but an evaluation that necessarily incorporates what the litigant learned from its lawyer -- the communication is discoverable and admissible." *Id*., 199 Ariz. at 58, 13 P. 3d 1175.

> When a litigant seeks to establish its mental state by asserting that it acted after investigating the law and reaching a well-founded belief that the law permitted the actions it took, then the extent of its investigation and the basis for its subjective evaluation are called into question. Thus, the advice received

9

> from counsel as part of its investigation and evaluation is not only relevant but, on an issue such as this, inextricably intertwined with the court's truth-seeking functions. A litigant cannot assert a defense based on the contention that it acted reasonably because of what it did to educate itself about the law, when its investigation of and knowledge about the law included information it obtained from its lawyer, and then use the privilege to preclude the other party from ascertaining what it actually learned and knew.

*Id.*, 199 Ariz. at 60, 13 P. 3d 1177.

Here, Defendants have done the same thing as State Farm. They allege as affirmative defenses that they "initiated and engaged in good faith efforts to accommodate Plaintiff's religious beliefs and practices by thoroughly researching applicable law, regulations and alternative equipment; investigating all options and concluded that granting the requested accommodation was not possible because it would violate OSHA and ADOSH regulations, result in undue hardship to Defendants' business and violate the Establishment Clause of the United States Constitution. (L.R.Civ. 37.1 Statement, at ¶ 1.) Separate and apart from whether any of this is true, Defendants' have placed "what they knew and when they knew it" squarely in play regardless of the source by raising these issues. *Walker*, *Fox*, *Hearn* and *State Farm* each stand for the proposition that under such circumstances, a defendant waives attorney-client and work product privileges and that a plaintiff is entitled to discover the information upon which the defendant based its decision.

**B.  Communications with Internal Counsel prior to May 29, 2009, were made in the ordinary course of business and not in anticipation of litigation. Accordingly, they are not protected by the work product doctrine.**

The work product doctrine protects documents and tangible things prepared

10

in anticipation of litigation. *See* Fed.R.Civ.P. 26(b)(3)(A). Plaintiff filed his initial Complaint on May 29, 2009. (Doc. # 1.) Plaintiff contends that documents containing communications with Internal Counsel or that were generated prior to May 29, 2009 are not protected by the work product doctrine and should be produced. See *IGT v. Alliance Gaming Corp.*, 2008 WL 706623, 3 (D.Nev.,2008)(emails were not generated in anticipation of litigation because they were but part normal course of business and related to internal investigation of non-litigation issues). Plaintiff anticipates that Defendants will argue that any document, email or communication that came into existence or occurred after Mr. Fazlovic filed his first EEOC charge on September 7, 2006 is work product.[6] Plaintiff does not seek discovery of Ms. McCormick's mental impressions, conclusions, opinions, or legal theories concerning positions taken by the Defendants after this litigation was commenced or how Defendants' planned to respond to Mr. Fazlovic's EEOC charges. Rather, as explained above, Plaintiff seeks discovery of information that formed the basis for Defendants' decision to deny Mr. Fazlovic's requests for religious accommodations *at a time when he was still working as an employee of MCSO* and when Defendants were still evaluating whether or not to grant those requests.

Defendants were clearly considering how to respond to Plaintiff's requests for religious accommodation beginning in July 2005, if not earlier, and frequently revisited the basis for the issue each time Mr. Fazlovic made a new request. Defendants did so in the ordinary course of the business of the County and MCSO. (L.R.Civ. 37.1 Statement, at ¶ 8.) There is no evidence this periodic review and analysis occurred in anticipation of litigation. (Id.)

As one judge in this district has observed:

> Pursuant to Fed.R.Civ.P. 26(b)(3), the following conditions must be satisfied in order to establish work product

---

[6] Defendants will undoubtedly also argue that even if the Court were to determine that the September 7, 2006 date is not the genesis of Defendants' anticipation of litigation, the filing of the second EEOC charge on October 11, 2007 if not some earlier date, is evidence of when they reasonably anticipated litigation. Defendants' actions refute any such assertion. See L.R.Civ. 37.1 Statement, at ¶ 8.

> protection: (1) the material must be a document or tangible thing; (2) the material must be prepared in anticipation of litigation; and (3) the material must be prepared by or for a party, or by or for its representative. (Footnote omitted)(Citations omitted) "[T]here is no work product immunity for documents prepared in the ordinary course of business prior to the commencement of litigation." (Citation omitted)

*Yurick ex rel. Yurick v. Liberty Mut. Ins. Co.*, 201 F.R.D. 465, 472 (D.Ariz.,2001).

The analysis does not rest there. It is Defendants' burden to establish the basis for the claim of work product immunity. "The burden of establishing protection of alleged work product is on the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion." 201 F.R.D. at 472. Defendants have made no such showing, nor can they. As previously stated, as late as December 11, 2008, prior to commencement of this action, Ms. McCormick confirmed with ADOSH that the County and MCSO "has been contacting [ADOSH] at least annually since 2005 to determine whether ADOSH will permit a MCSO Detention Officer to retain a beard and wear a SCBA. (L.R.Civ. 37.1 Statement, at ¶ 8.) No mention was made in Ms. McCormick's letter of any anticipation of litigation. Rather, she explains this consideration had been ongoing over the years as part of the process to consider requests from several Detention Officers who asked to be allowed to wear beards as part of their religious faith. (Id.)

**C. Even if the Court determines that some or all of the documents and tangible information Defendants have withheld is work product, Plaintiff has substantial need for this information and cannot obtain it by other means.**

As explained, Plaintiff believes that none of the information Defendants have withheld constitutes work product. Even if the Court determines otherwise with regard to some documents or all of the documents, however, Mr. Fazlovic believes he is still entitled to them. "Work product protection, unlike attorney client privilege, is not absolute and can be overcome by a showing of substantial need and inability to obtain the equivalent of the materials through other means." *Walker v. County of Contra Costa*, 227 F.R.D. 529, 536 (N.D.Cal.,2005). It is Defendants who have placed what they knew,

12

regardless of the source, directly in issue by virtue of their affirmative defenses. The Ninth Circuit has recognized that even mental impressions under certain circumstances are discoverable.

> We agree with the several courts and commentators that have concluded that opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling. *See, e.g., Bio-Rad Labs., Inc. v. Pharmacia, Inc.,* 130 F.R.D. 116, 122 (N.D.Cal.1990); *Reavis,* 117 F.R.D. at 164; *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 932-33 (N.D.Cal.1976); *Bird v. Penn Cent. Co.,* 61 F.R.D. 43, 47 (E.D.Pa.1973); 4 J. Moore, Federal Practice ¶ 26.64[3.-2], at 26-385 & n. 8 (2d ed. 1991); J. Anderson et al., The Work Product Doctrine, 68 Cornell L.Rev. 760, 831-37 (1983). *But see* 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2022, at 188 n. 97, 193, § 2026, at 229-32 (1970).
>
> Both elements are met here. In a bad faith insurance claim settlement case, the "strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue." *Reavis,* 117 F.R.D. at 164. Further, Holmgren's need for the exhibits was compelling. Montana permits insureds and third party claimants to proceed under § 33-18-201 against an insurer for bad faith in the settlement process. *See* Mont.Code Ann. § 33-18-242 (1979) (applicable to claims arising after July 1, 1987); *Klaudt v. Flink,* 202 Mont. 247, 658 P.2d 1065, 1067 (1983), *overruled on other grounds, Fode v. Farmers Ins. Exch.,* 221 Mont. 282, 719 P.2d 414 (1986). Unless the information is available elsewhere, a plaintiff may be able to establish a compelling need for evidence in the insurer's claim file regarding the insurer's opinion of the viability and value of the claim. We review the question on a case-by-case basis.

*Holmgren v. State Farm Mut. Auto. Ins. Co*., 976 F.2d 573, 577 (9th Cir. 1992)

The similarity between a bad faith insurance claim and Defendants' conduct in this case is apparent. In each instance, the decision-makers are defending on the basis that they made a careful investigation of the facts and law, consulted with counsel, acquired a knowledge basis which includes legal knowledge of what can and cannot be done, and then acted in a manner they claim to be the appropriate course of action after careful consideration of all available information including that which was obtained from counsel. The problem for Mr. Fazlovic, however, is that he does not know what legal advice, including opinions of counsel, were communicated to Defendants, if the advice was to

grant any or all of his requests for religious accommodation or whether Defendants ignored or rejected that advice. That information is inextricably intertwined with email communications and documents exclusively within the control of Defendants and Internal Counsel. Plaintiff cannot obtain it from any other source. Furthermore, whether Defendants knew or reasonably should have known that they may have been violating a clearly established right (i.e. freedom to exercise religion by wearing facial hair) also depends, at least in part, on what Defendants were told by Internal Counsel and how they chose to proceed in the face of that advice. *Hearn*, 68 F.R.D. at 576-577 citing *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975); *See also Verizon California Inc. v. Ronald A. Katz Technology Licensing, L.P.,* 266 F.Supp.2d 1144, 1148 (C.D.Cal., 2003)( "[T]he attorney-client privilege and work product immunity 'may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, [these protections] may be implicitly waived.'").

      **D.**    **In the alternative, Plaintiff requests that Defendants submit all documents in camera for review to determine whether they should be protected by the attorney-client privilege or should be withheld as work product.**

Defendants have identified multiple documents as protected by the attorney-client privilege or work product doctrine. (L.R.Civ. 37.1 Statement, at ¶ 8.) If the Court is inclined to deny some or all of Plaintiff's Motion to Compel, before doing so, Mr. Fazlovic respectfully requests that the Court order Defendants to produce for an *in camera* inspection, any document withheld on the basis of attorney-client privilege or work product which the Court does not order produced to Plaintiff before making a final ruling on Plaintiff's Motion to Compel.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court order Defendants to disclose all communications with or in the presence of Internal Counsel, including Ms. McCormick, that relate to Plaintiff's requests for religious accommodation. Specifically, Plaintiff requests that the Court direct Defendants to supplement their previous discovery responses by providing, in unredacted format, all documents containing communications to or from Internal Counsel, including documents and emails on which Ms. McCormick was copied which occurred or are dated between January 2004 and December 2008, as well as notes or memoranda of all meetings at which Ms. McCormick or other Internal Counsel were present that relate to the Detention Officer, facial hair, and self-contained breathing apparatus issues including, but not limited to, notes and communications concerning the two meetings in or around September 2005 described by James Mason in his August 10, 2010 deposition. (L.R.Civ. 37.1 Statement, at ¶ 6.) Plaintiff also requests unredacted copies of all documents (including electronically stored information) forwarded to or from Ms. McCormick or other Internal Counsel as part of Defendants' decision whether or not to grant Plaintiff's requests for religious accommodation.  Plaintiff also requests that he be allowed to re-depose Defendants, Tiffani Shaw and James Mason and to question all future deponents concerning communications with or in the presence of Ms. McCormick and other Internal Counsel concerning requests for religious accommodations by Detention Officers, including Plaintiff, regarding facial hair and/or any request by a Detention Officer to wear facial hair. Plaintiff further requests that he be permitted to depose Clarisse McCormick on these same issues. Plaintiff requests such further relief as is proper and just.

RESPECTFULLY SUBMITTED this 8th day of September, 2010.

                    MARTIN & BONNETT, P.L.L.C.

        By: s/Daniel L. Bonnett_____
           Daniel L. Bonnett
           Susan Martin
           Jennifer L. Kroll
           Mark A. Bracken
           1850 N. Central Ave., Suite 2010
           Phoenix, AZ  85004
           (602) 240-6900

                  -and-

           Daniel J. Pochoda
           ACLU Foundation of Arizona
           3707 N. 7th Street, Suite 235
           Phoenix, AZ 85014
            (602) 650-1854

           Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

>Erin E. Byrnes
>Nathan D. Meyer
>Lisa S. Wahlin
>Graif, Barrett & Matura, P.C.
>1850 N. Central Avenue, Suite 500
>Phoenix, AZ  85004
>ebyrnes@gbmlawpc.com
>nmeyer@gbmlawpc.com
>lwahlin@gbmlawpc.com

  s/K. Pasley_____